SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,

v.

PUBLIC UTILITY COMMISSION OF TEXAS, et al., Appellees.

No. 13471.

Court of Civil Appeals of Texas, Austin.

June 10, 1981.

Rehearing Denied July 8, 1981.

Barry K. Bishop, David C. Duggins, Clark, Thomas, Winters & Shapiro, Austin, for appellant.

Mark White, Atty. Gen., Stuart Fryer, Asst. Atty. Gen., Austin, for Public Utility Commission.

Earnest Casstevens, McGinnis, Lochridge & Kilgore, Austin, for Texas Daily Newspaper Association.

Samuel D. McDaniel, Don W. Kothmann, McDaniel & Travis, Austin, for Tandy Corp.

Dick Terrell Brown, Andrew S. Viger, McCamish, Ingram, Martin & Brown, Inc., San Antonio, for Datapoint Corp.

POWERS, Justice.

This appeal requires that we determine whether the Public Utility Commission of Texas possesses the statutory power to order summarily that a public utility cease certain conduct pending an evidentiary hearing on the question of whether the Commission has jurisdiction to prohibit the conduct. The issue arose from the following events.

Southwestern Bell Telephone Company, appellant, is a public utility regulated by the Commission under the Public Utility Regulatory Act ("PURA"), Tex.Rev.Civ. Stat.Ann. art. 1446c. The company maintains with the agency a valid certificate of public convenience and necessity allowing it to furnish telephone service in Austin, Texas, according to a tariff on file with the Commission. In May, 1980, the company determined to conduct an experiment to

test the feasibility of an "electronic information system" which the company may, in the future, make available to the public if it so determines based upon its business decisions.[1] The company concedes that if it decides to offer such service to the public in the future, it may do so only after following the provisions of PURA relative to amending its certificate and after obtaining a favorable decision by the Commission. The company contends, however, that it need not obtain approval of the Commission, merely to conduct the experiment, a matter we need not now decide for the reasons stated below.

In June 1980, the company notified the Commission of its plan to conduct the experiment and requested that its tariff be amended to include a description of the experiment. The request was referred to the Commission's staff. Because no rate increase was involved, the staff consented to the tariff amendment on the condition that the company account to the Commission for the cost of the experiment, which the company agreed to do. The tariff was then amended by including therein a description of the nature of the experiment and reciting that it would be conducted between June 1, 1981, and August 1, 1982. The company commenced immediately to expend large amounts of money, to transfer employees, and otherwise to prepare for the experiment.

In December 1980, appellee Texas Daily Newspaper Association, a trade association composed of the publishers of daily newspapers, filed with the Commission a complaint and motion to strike from the company's tariff the provisions pertaining to the experiment. In addition, the association requested that *after final hearing* the compa-

ny be prohibited from conducting the experiment. The company responded with a motion to dismiss the complaint for want of jurisdiction, as did the Commission's general counsel. Appellee Datapoint Corporation moved to intervene in the proceeding for the purpose of contesting the company's right to conduct the experiment.

The Commission set the various motions for hearing on January 29, 1981. After this hearing, the motions were taken under advisement by the Commission. The question of whether the Commission could and should prohibit actions by the company, directed at furthering the experiment pending a final decision by the Commission, was not raised before or during the hearing.

On February 26, 1981, the Commission issued its order directing that the case be remanded to its hearing division for a public evidentiary hearing. In addition, the order summarily directed that the company "cease its conduct of the experiment pending the evidentiary hearing. . . ." The company, contending that the Commission lacked authority to prohibit conduct of the experiment without a hearing, pending a final hearing, applied to the district court for a declaratory judgment to that effect and for an injunction restraining enforcement of that part of the Commission's order. The district court refused the injunction and dismissed the cause on the ground that it lacked jurisdiction "because primary and exclusive jurisdiction of this matter rests with the Public Utility Commission of Texas." There were no other findings of fact or conclusions of law filed in the case. From this judgment, the company perfected its appeal to this Court.

The central issue is whether the Commission has authority, as some administrative

---

1. The experiment involves contracts made by the company with each of several hundred of its telephone-service subscribers, wherein each subscriber has agreed to receive in his home or business establishment a terminal linked by the company's local and long-distance lines with a central data bank in Dallas, Texas. The information contained in the data bank can be called forth by any such subscriber to be displayed on a television screen forming part of the terminal. The information stored in the data bank is similar to that contained in the white and yellow pages of the telephone directories published by the company. The experiment is intended to last several months. There will be no charge made to a participating subscriber or to a businessman who permits the storage and transmission of information advertising his business enterprise. By agreement with the company, an affiliate (American Telephone and Telegraph Company) will reimburse the company for the cost of the experiment.

agencies do, to issue without a prior hearing, an order that prohibits a certain course of conduct. As mentioned above, the matter of whether the company could continue preparation for the experiment, pending the final hearing ordered by the Commission, had never been raised before the Commission entered the order of which appellant complains. The order may reasonably be interpreted to forbid conduct directed at commencing the experiment on June 1, 1981. We hold that the questioned part of the Commission's order was beyond the statutory authority of the Commission to enter *without a hearing.*

The Commission and other appellees contend that the district court lacked jurisdiction because the order in question was an *interim* order, entered in an administrative proceeding of which the Commission had general jurisdiction under PURA. The order, therefore, was not appealable until the company had "exhausted its administrative remedy" by completion of the administrative process, that is, until after final hearing in the agency. The company responds by asserting among other things that there exists no statutory provision applicable to the case which authorizes the Commission to issue an order without a hearing and adjudication of the underlying issues of fact and law involved; and if the Commission is found to have such statutory authority, its issuance of the order in this case violated the constitutional guaranty of procedural and substantive due process of law, contained in the 14th Amendment of the Constitution of the United States. The Commission and other appellees contend that certain sections of PURA *by implication* grant the Commission the requisite authori-

ty to issue the order and that it is constitutionally permissible.

■ It may be stated generally that an administrative agency such as the Commission has no inherent power. Its jurisdiction and the nature and extent of its powers must be found within the constitutional and statutory provisions which are applicable to the agency. In the case of the Commission, there is no applicable constitutional authorization. In PURA, however, the Legislature has granted the Commission many general and broad powers, as well as many specific powers.[2] For example, section 16 empowers the Commission "to regulate and supervise the business of every public utility within its jurisdiction . . . ." In the regulation of telecommunications utilities such as Southwestern Bell Telephone Company, section 18 gives the Commission "exclusive original jurisdiction over the business and property . . . ." of such utilities. Section 37 vests in the Commission all power and authority of The State of Texas to insure compliance with the statute. Our attention has not been invited, however, to any statutory provision, in PURA or any other statute, which expressly and specifically grants the Commission authority to issue a summary order directing that a utility "cease" any kind of conduct. The question then arises whether the Commission is given that power by implication, as appellees contend.

■ As a general rule, administrative agencies have by implication such powers as are necessary to effectuate the objectives of those powers expressly granted to them. *City of Corpus Christi v. Public Utility Comm'n*, 572 S.W.2d 290 (Tex.1978); *State v. Jackson*, 376 S.W.2d 341 (Tex.1964); *Stauffer v. City of San Antonio*, 162 Tex.

2. Despite the rather broad language used in PURA in granting powers to the agency, as in sections 16, 18, and 37, we find that the statute simultaneously circumscribes or limits the exercise of such powers in specific situations. For example, with respect to the "management and affairs" of a public utility, the Commission is permitted only to "inquire" into such matters and is instructed to "keep itself informed as to the manner and method in which the same are conducted." PURA § 29(c). Similarly, with respect to other managerial and organizational

activities of a public utility, the Commission is permitted by the statute merely to learn what such activities consist in and, if rates are affected thereby, to take such matters into account in setting rates. *See, e. g.,* PURA §§ 63, 64, 65, 67, and 68. In consequence, one must read the statute carefully to ascertain the exact extent of any power given the Commission therein, without placing undue emphasis upon other sections of the statute which may grant very general powers in the broadest language.

13, 344 S.W.2d 158 (1961); *Railroad Comm'n v. Red Arrow Freight Lines*, 96 S.W.2d 735, 738 (Tex.Civ.App.—Austin 1936, writ ref'd). PURA expressly provides that the Commission shall have the power "to do all things ... necessary and convenient to the exercise of any specific or implied power." PURA § 16.

■ Mindful of the foregoing, we nevertheless find no basis for appellees' contention that the Legislature has by implication given the Commission power to enter without hearing an order which prohibits any conduct by a public utility. The power to enter such orders is one not ordinarily implied because the exercise of such a power almost inevitably leads to a confrontation on constitutional grounds as it did in this case.[3] Moreover, the entire tenor of the "contested case" provisions of section 13 of the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat. Ann. art. 6252–13a, incorporated by PURA § 4, is antithetical to any power in the Commission to render a summary order which, as it does here, substantially affects one's legal rights, duties, or privileges. The grant of such power is ordinarily limited to situations where the public risks avoided by summary action outweigh the unconstitutional invasions that would normally follow. Even when such a justification exists, the power to act summarily and without prior hearing and adjudication must be directly, expressly and clearly given by the Legislature to the agency. *See, e. g.*, Tex.Rev.Civ. Stat.Ann. arts. 581–7, § B(2), c; 135b–5a, § 11(b); 5736g, § 3(d); 4447u, § 11(b); Tex.

Alcoholic Bev.Code, § 5.36(a); Tex.Tax.—Gen.Ann. art. 20.09(H). In contrast, the Legislature has provided in PURA that the Commission should rely upon judicial enforcement generally, and in particular that the agency must resort to the judiciary to prevent threatened violations of the statute. PURA §§ 71, 72, 73, 74 and 75. All of the foregoing forbid an interpretation of PURA which would place in the Commission an implied power to enter summary orders that prohibit any specific conduct by a public utility, notwithstanding the rather broad and general regulatory powers given the agency by certain sections of the statute.

■ Having held that the challenged portion of the Commission's order was beyond the power of the agency to render, we must consider whether the district court had jurisdiction to determine its validity and restrain its enforcement if found to be invalid. When, as here, an agency issues an order beyond its authority and thereby interferes with substantial business interests of a person, he may resort immediately to the courts for protection and need not await completion of the administrative proceeding. *Glen Oaks Utilities, Inc. v. City of Houston*, 161 Tex. 417, 340 S.W.2d 783 (1960). Moreover, it is well established that there exists an inherent right to appeal to a district court from an administrative order that violates a constitutional right and a district court may act to protect that right. *Id.; c. f., Fireman's & Policeman's Civil Service Comm'n v. Blanchard*, 582 S.W.2d 778 (Tex.1979). We hold that the order in

---

**3.** "The power to act summarily is a drastic and sensitive one, akin to the injunctive power of a court; it is granted to agencies, usually those having the confidence of the legislature, only for the performance of a limited number of tasks. Given the political process by which administrative agencies are brought to birth and the drastic nature of the power to act summarily, it is justifiable to assume that a legislature's failure to delegate summary authority was not inadvertent. Whatever arguments can be made in favor of implying the existence in an agency of particular powers not expressly or precisely delegated, they are not appropriate to the power to act summarily.

"Moreover, any assertion of authority to act summarily potentially presents questions of constitutional dimension, particularly with respect to the limitations summary action may impose on the right to a hearing. By enforcing a requirement of statutory authorization, courts insure that they will confront these questions only when the legislature has focused upon them as a matter of policy and has unambiguously elected to present them. Courts thereby avoid imputing to the legislature the intention to enact laws presenting serious constitutional questions when the legislature's intention is far from clear." Freedman, "Summary Action by Administrative Agencies," 40 U.Chi.L.Rev. 1, 6 (1972).

question did not comply with the most rudimentary demand of due process of law—fair notice. No party to the proceeding requested that the company be forbidden to pursue the experiment pending a final hearing and the company was not otherwise given notice that such action was contemplated by the Commission. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The Commission failed to comply with the notice provisions of APTRA, § 13, and its action was invalid on that additional ground. We hold that the district court had both the inherent power and the statutory power to entertain and determine the company's action seeking a declaration of the order's validity or invalidity, and to grant injunctive relief if it found the order to be invalid. Tex.Rev.Civ. Stat.Ann. art. 4642.

We need not, and do not, determine whether the Commission possesses jurisdiction to prohibit the experiment in question after final hearing. That is a matter presumably to be addressed by the agency in the final hearing it has ordered for February 6, 1981. We hold, merely, that the Commission may not summarily prohibit the experiment pending such final hearing. Accordingly, we declare void the order of February 26, 1981, insofar as it directs the company to "cease its conduct of the experiment pending the evidentiary hearing." We remand the cause to the district court for entry of an appropriate injunctive order.