907 F.2d 1544
 Alvy Thomas McQUEEN, Individually and d/b/a Livingston Oil,
Plaintiff-Appellant,
v.
Bob BULLOCK, Comptroller, in his official capacity,
Defendant-Appellee.
Alvy T. McQUEEN, Plaintiff-Appellant,
v.
UNITED STATES of America and Comptroller of Public Accounts,
State of Texas, Defendants-Appellees.
 Nos. 89-1257, 89-6146.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 9, 1990.
 
 John A. Townsend, Judith Hession, Mayer, Brown & Platt, Houston, Tex., for Alvy Thomas McQueen.
 David Randell, Ron Del Vento, Asst. Attys. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for Bob Bullock.
 Henry K. Oncken, U.S. Atty., Sarah R. Tunnell, Asst. U.S. Atty., Houston, Tex., William A. Whitledge, Charles E. Brookhart and Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C., for U.S. and Comptroller.
 Appeal from the United States District Court for the Western District of Texas.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GOLDBERG, POLITZ and JONES, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.[1]
 
 
 2
 Our Janus-faced sovereignty has once again raised its head. Posing for the republic, it demands uniformity. Yet behind its state-bordered cloak, it languishes to be different, in any one of fifty stately ways. This tense but tensile and sometimes tenacious duality fits tersely within our jurisdictional doctrine--doctrine which we sometimes extend to union causes, but that today, obliges us to restrain for the state.
 
 
 3
 In separate actions, Alvy T. McQueen ("McQueen") sued the United States and the Comptroller of Public Accounts of the State of Texas (the "Comptroller"). For this appeal, we consolidated both actions. In the Western District of Texas, McQueen sought to enjoin the Comptroller from administering the applicable Texas tax scheme which he claims is in violation of federal procedural due process requirements.[2] The district court denied the injunction. ("McQueen I "). We affirm.
 
 
 4
 In the Southern District of Texas, McQueen claimed that the United States and the Comptroller violated rule 6 of the Federal Rules of Criminal Procedure. The district court dismissed the complaint. ("McQueen II "). Under a different rationale, we affirm.
 
 I. THE FACTS
 
 5
 In June of 1988, the Comptroller assessed McQueen approximately $75,000 for taxes allegedly owed. The Comptroller increased this assessment to $250,000 in January of 1989. Then, one month later, in February of 1989, the Comptroller assessed McQueen an additional eight million dollars. The Comptroller claimed that it imposed the assessments because McQueen, a fuel distributor, failed to remit diesel fuel taxes due under the Texas tax code.
 
 
 6
 McQueen attempted to avail himself of an administrative hearing after each assessment. The record on appeal does not indicate that Texas issued any rulings. Throughout the time of this appeal, however, a federal grand jury has been investigating motor fuel tax evasion. Whether or not this grand jury targeted McQueen remains unclear. McQueen, however, claims that the Comptroller obtained the information necessary to impose the assessments by violating, in tandem with the United States, federal grand jury secrecy provisions.
 
 II. McQUEEN I: PROCEEDINGS BELOW
 
 7
 McQueen filed a complaint, a request for a temporary restraining order, and a request for a preliminary injunction in the Western District of Texas. The Comptroller opposed the temporary restraining order and also filed a motion to dismiss. The district court denied the temporary restraining order and the preliminary injunction and granted the Comptroller's motion to dismiss McQueen's complaint. The court held that the Tax Injunction Act deprived it of jurisdiction to consider the injunction and the complaint. According to the district court, because the Comptroller provides remedies to taxpayers that are, in the terms of the Tax Injunction Act, "plain, speedy and efficient," McQueen could not enjoin the administration of the applicable Texas tax statutes in federal court. McQueen appealed.
 
 III. McQUEEN I: DISCUSSION
 
 8
 McQueen claims, inter alia,[3] that the magnitude of the jeopardy assessments caused him to suffer an irreparable injury. Given this injury, he argues that the applicable Texas tax scheme contravenes federal procedural due process requirements because it fails to provide: (1) a prompt post-deprivation hearing that establishes the probable validity of the assessments; and, (2) an impartial administrative law judge to preside over this constitutionally mandated hearing. These deficiencies, according to McQueen, preclude application of the Tax Injunction Act, which generally bars federal court jurisdiction over state tax administration. Instead, he concludes that the Tax Injunction Act compels us to confer jurisdiction because, in the statute's language, the remedies that Texas provides are not "plain," "speedy," or "efficient." We disagree.
 
 The Tax Injunction Act states that:
 
 9
 The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.[4]
 
 
 10
 Under Supreme Court precedent, the Tax Injunction Act imposes an equitable duty on federal district courts to refrain from exercising jurisdiction over claims arising from state revenue collection except when the remedies the state provides could prevent a taxpayer from asserting a federal right.[5] State remedies that prevent the assertion of a federal right are not, in the words of the Tax Injunction Act, "plain," "speedy" or "efficient." If they do, a federal court may assert jurisdiction over a state taxpayer's claim.
 
 
 11
 Historically,
 
 
 12
 The reason for this guiding principle [of equitable restraint] ... [was] of peculiar force in cases where the suit, like the present one, [was] brought to enjoin the collection of a state tax in courts of a different, although paramount, sovereignty. The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.[6]
 
 
 13
 Equity practice, federalism, and a state's imperative need to administer its fiscal operations thus constitute the statute's marrow.[7] However, "[t]his last consideration was the principle motivating force behind the [Tax Injunction Act]: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."[8]
 
 
 14
 Under the Tax Injunction Act, McQueen has a "plain," "speedy," and "efficient" remedy because Texas courts would permit him to assert his federal claims.[9] Texas courts do not demand the exhaustion of administrative remedies but instead extend jurisdiction to remedy the irreparable injuries that agencies cannot redress.[10] Similarly, they extend jurisdiction over claims that an agency contravened constitutional imperatives.[11] In a Texas trial court, McQueen could thus claim that the Comptroller violated federal procedural due process requirements by failing to provide a neutral administrative law judge to promptly determine the validity of the assessments which allegedly caused McQueen to suffer an irreparable injury.
 
 
 15
 And, while a Texas trial court considers McQueen's constitutional claims, it can also enjoin the running of the time period available to implement the Comptroller's administrative proceedings. The Texas legislature, under the Texas Constitution's authority,[12] permits Texas courts to grant injunctions if "irreparable injury to real or personal property is threatened, irrespective of any remedy at law." Tex.Civ.Prac. and Rem.Code Ann. Section 65.011 (Vernon 1986).[13]
 
 
 16
 This general injunction statute, section 65.011, satisfies one of the Supreme Court's federalism concerns under the Tax Injunction Act. In Tully v. Griffin Inc., the Court stated:
 
 
 17
 It also seems clear that under New York law Griffin can fully preserve its right to challenge the amount of tax due while litigating its constitutional claim that no tax at all can validly be assessed against it. Griffin, in other words, need not accept as binding the Tax Commission's rough estimate of its sales tax liability as price of challenging the constitutionality of the tax.
 
 
 18
 Texas jurisprudence provides no reason to believe that Texas courts, unlike New York courts, would penalize McQueen for challenging the constitutionality of his administrative remedy by allowing the administrative limitations period to run.[14] Similarly, Texas jurisprudence does not suggest, or even cast a penumbra of a doubt, that McQueen would have to invoke the taxpayer injunction statute, which requires the prepayment of taxes allegedly due or the posting of a bond as a prerequisite for an injunction, instead of the general injunction statute.[15] Tex.Tax Code Ann. Section 112.101 (1982). In fact, the only authority available indicates that McQueen would not have to prepay any money to maintain his right to an administrative remedy while he litigates his federal constitutional claims. Texas Alcoholic Beverage Commission v. Macha.[16]
 
 
 19
 In Macha, the taxpayer claimed that the Texas Alcohol and Beverage Commission's (the "TACB") suspension of his liquor permits, for failure to remit taxes allegedly due, violated the Texas constitution's due process provision. The trial enjoined the suspension. On appeal, the TACB argued that the trial court erred in granting the injunction because it failed to require the taxpayer to prepay the taxes allegedly due or to post a bond under the taxpayer injunction statute. Tex.Tax Code Ann. Section 112.101. The court of appeals disagreed. The court stated that:[s]ince the [trial] court's stay order does not prohibit the collection of a state tax, license, registration or filing fee, section 112.101 does not control on any of those bases.[17]
 
 
 20
 McQueen, like the taxpayer in Macha, has only requested due process. Neither McQueen nor the Macha taxpayer impugned the validity of the assessment on appeal. McQueen only claimed a right to a prompt post-deprivation hearing where a neutral administrative law judge could determine the probable validity of the Comptroller's assessments. The analogy between McQueen I and Macha thus demonstrates that Texas courts will not penalize McQueen for raising his due process claims by imposing a prepayment requirement through the taxpayer injunction statute. Texas law does not even whisper that the general injunction statute would not apply.
 
 
 21
 As we noted in Dawson v. Childs,[18] "Texas ... 'has a vast arsenal to assure orderly adjudication of [ ] serious federal constitutional question[s]....' " Dawson, supra, at 710 (citing City of Houston v. Standard Triumph Motor Co., 347 F.2d 194, 199 (5th Cir.1965), cert. denied, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966). The jurisprudence suggests no penalty for raising these claims. As such, Texas provides remedies which are, under the Tax Injunction Act, "plain," "speedy," and "efficient." Therefore, we may not extend jurisdiction over McQueen's claims.
 
 IV. McQUEEN II: PROCEEDINGS BELOW
 
 22
 McQueen filed a complaint, an application for a temporary restraining order, and an application for a temporary injunction, against the United States and the Comptroller, in the Southern District of Texas. He claimed that the Comptroller based the January 1989 and February 1989 assessments on information obtained in violation of rule 6 of the Federal Rules of Criminal Procedure. According to McQueen, the grand jury assistants disclosed documents occurring before the grand jury to the IRS and the Comptroller. As a result, McQueen sought to enjoin: (1) further violations of rule 6; (2) the Comptroller and the IRS to return documents and information obtained from grand jury assistants in violation of rule 6; (3) the Comptroller from using the documents or information; and, (4) the Comptroller's assessments which were based on the documents or information.
 
 
 23
 The United States and the Comptroller opposed McQueen's application for a temporary restraining order and McQueen's application for a temporary injunction. They also moved to dismiss the complaint. The court denied the temporary restraining order and the temporary injunction and then granted the United States' motion to dismiss under rule 12(b)(6). The court stated that:
 
 
 24
 Pending before the Court is Defendant United States of America's Motion to Dismiss.... The documents obtained by the federal government pursuant to a search warrant did not automatically become grand jury documents at the time they were disclosed to the Comptroller of the State of Texas. Because Rule 6(e) is not implicated by the agent's conduct, plaintiff's argument must fail.
 
 
 25
 The court did not decide the Comptroller's rule 12(b)(6) motion. McQueen appealed the court's dismissal of his claim against the United States.
 
 V. McQUEEN II: DISCUSSION
 
 26
 McQueen II must likewise be dismissed because we conclude that it is barred by the doctrine of sovereign immunity. Under the doctrine of sovereign immunity, the United States cannot be sued without its consent.[19] McQueen sued the United States for alleged violations of rule 6(e) of the Federal Rules of Criminal Procedure. Yet there are no statutes that even remotely suggest that the United States has consented to suit for rule 6(e) violations. Instead, the case law reveals that rule 6(e) must be enforced through contempt motions filed against the individuals subject to its admonitions.[20] McQueen has opted for a procedure and for relief which is not available to him. Thus, sovereign immunity prevents review of McQueen's appeal against the United States.
 
 VI. CONCLUSION
 
 27
 The Tax Injunction Act precludes exercise of our jurisdiction over the claims McQueen raised in McQueen I. The doctrine of sovereign immunity precludes our exercise of jurisdiction over McQueen II. In each case the dismissals must be affirmed.[21] AFFIRMED IN BOTH CASES.
 
 
 
 [1]
 James Madison, The Federalist No. 51
 
 
 [2]
 In McQueen I, McQueen sued the Comptroller, Bob Bullock, in his individual and official roles
 
 
 [3]
 We have considered McQueen's other claims but because our ruling disposes of the case on other grounds, we do not discuss them here
 
 
 [4]
 28 U.S.C. Sec. 1341
 
 
 [5]
 Tully v. Griffin Inc., 429 U.S. 68, 73-75, 97 S.Ct. 219, 222-24, 50 L.Ed.2d 227 (1976) ("A federal district court is under an equitable duty to refrain from interfering with a State's collection of its revenue except in cases where an asserted federal right might otherwise be lost.... We turn to the basic inquiry--whether under New York law there is a 'plain, speedy and efficient' way for [the taxpayer] to press its constitutional claims while preserving the right to challenge the amount of tax due...."); See also California v. Grace Brethren Church, 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982) ("In particular, a state-court remedy is 'plain, speedy and efficient' only if it 'provides the taxpayer with a full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax [citations omitted]."); Rosewell v. City of LaSalle National Bank, 450 U.S. 503, 514, 101 S.Ct. 1221, 1229-30, 67 L.Ed.2d 464 (1981) (same); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300-301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943) ("[I]t is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes.")
 
 
 [6]
 Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932)
 
 
 [7]
 Tully v. Griffin Inc., 429 U.S. at 73, 97 S.Ct. at 222-23; Rosewell v. City of LaSalle National Bank, 450 U.S. at 522, 101 S.Ct. at 1233-34
 
 
 [8]
 Franchise Tax Board of California v. Alcan Aluminum, 493 U.S. ----, ----, 110 S.Ct. 661, 666, 107 L.Ed.2d 696, 705 (1990); California v. Grace Brethren Church, 457 U.S. at 409, 102 S.Ct. at 2508; Rosewell v. City of LaSalle National Bank, 450 U.S. at 522, 101 S.Ct. at 1233-34
 
 
 [9]
 We note that we have previously addressed the adequacy of Texas remedies under Sec. 1341 and have found them to be "plain, speedy and efficient." See Dawson v. Childs, 665 F.2d 705, 710 (5th Cir. Unit A Jan. 1982) (taxpayer has access to injunctive relief or declaratory judgment under Texas law to enjoin a tax lien); Alnoa G. Corp. v. City of Houston, 563 F.2d 769, 772 (5th Cir.1977) ("spectre of arbitrariness" in state proceedings insufficient basis to justify federal intervention--"state remedy need not be best of all possible remedies ... only adequate."); Tramel v. Schrader, 505 F.2d 1310, 1314-16 (5th Cir.1975) (state remedies are adequate with regard to special assessments); City of Houston v. Standard Triumph Motor Co., 347 F.2d 194, 199 (5th Cir.1965), cert. denied, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966) (Texas provides for adequate injunctive and declaratory relief for taxpayer resisting ad valorem tax assessment.). The facial validity of the Texas remedies is thus well established. However, McQueen also challenges these remedies as they are applied to him. While we find they are also adequate as applied to McQueen, this is not to say that Texas remedies will necessarily always be adequate as applied in every individual case
 
 
 [10]
 Houston Federation of Teachers Local 2415 v. Houston Independent School District, 730 S.W.2d 644, 646 (Tex.1987) (Mauzy, J., concurring, Kilgarlin, J., concurring joined by Wallace, J., Hill, J., dissenting joined by Gonzalez, J.) ("Parties are not required to pursue the administrative process regardless of price. If irreparable harm will be suffered and if the agency is unable to provide relief, the courts may properly exercise their jurisdiction in order to provide an adequate remedy."); Glen Oaks Utilities Inc. v. City of Houston, 161 Tex. 417, 340 S.W.2d 783, 785 (1960) ("Generally the plaintiff has not actually suffered any injury until the administrative processes have been completed and the ruling complained of has been put into effect.... [However], [a]n administrative body cannot, by reserving for itself the power to change a ruling, deprive the courts of jurisdiction to the detriment of the parties injured by the ruling.... Since the ordinance in question went into effect immediately upon its enactment, petitioners had the immediate right to turn to the courts for relief."); Public Utility Commission of Texas v. Pedernales Electric Cooperative Inc., 678 S.W.2d 214, 220 (Tex.Civ.App.1984) ("There is an important corollary to the exhaustion doctrine. The doctrine comes into effect only if the administrative remedy is realistically adequate to protect the asserted claim. One is not compelled to exhaust an administrative remedy that is inadequate or that is insufficient fully to protect against the injury alleged by the applicant for injunction."); Southwestern Bell Telephone Co. v. Public Utility Comm. of Texas, 618 S.W.2d 130, 134 (Tex.Civ.App.1981) ("When, as here, an agency issues an order beyond its authority and thereby interferes with substantial business interests of a person, he may resort immediately to the courts for protection and need not await completion of the administrative proceeding.... Moreover, it is well established that there exists an inherent right to appeal to a district court from an administrative order that violates a constitutional right and a district court may act to protect that right."); Texas State Board of Pharmacy v. Walgreen Texas Co., 520 S.W.2d 845, 848 (Tex.Civ.App.1975) ("The principle of exhaustion of administrative remedies, like many judicial doctrines, is subject to exceptions. In those cases wherein the exhaustion of administrative remedies will cause irreparable injury, or wherein administrative remedies are inadequate, or wherein the agency's action is unconstitutional or beyond its jurisdiction or clearly illegal, the principle is sometimes relaxed.")
 
 
 [11]
 Southwestern Bell Telephone Co. v. Public Utility Comm. of Texas, 618 S.W.2d at 134; Texas State Board of Pharmacy v. Walgreen Texas Co., 520 S.W.2d at 848
 
 
 [12]
 Texas Constitution Article 5 section 8
 
 
 [13]
 Section 65.011, entitled "Grounds Generally" states:
 A writ of injunction may be granted if:
 (1) the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;
 (2) a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render judgment in that litigation ineffectual;
 (3) the applicant is entitled to a writ of injunction under the principles of equity and the statute of this state relating to injunctions;
 (4) a cloud would be placed on the title of real property being sold under an execution against a party having no interest in the real property subject to execution at the time of sale, irrespective of any remedy at law; or
 (5) irreparable injury to real or personal property is threatened, irrespective of any remedy at law.
 
 
 [14]
 Tex.Tax Code Ann. Section 111.022 (Vernon 1982) entitled "Jeopardy Determination" states:
 (a) If the comptroller believes that the collection of a tax required to be paid to the state or the amount of a determination is jeopardized by delay, the comptroller shall issue a determination stating the amount and that the tax collection is in jeopardy. The amount determined is due and immediately payable.
 (b) A determination made under this section becomes final on the expiration of 20 days after the day on which the notice of the determination was served by personal service or by mail unless a petition for a redetermination is filed before the determination becomes final.
 (c) If a determination made under this section becomes final without payment of the amount of the determination being made, the comptroller shall add to the amount a penalty of 10 percent of the amount of the tax and interest.
 
 
 [15]
 This section, entitled "Requirements Before Injunction" states that:
 (a) An action for a restraining order or injunction that prohibits the assessment or collection of a tax or fee imposed by this title or collected by the comptroller under any law, including a local tax collected by the comptroller, or a statutory penalty assessed for the failure to pay the tax or fee may not be brought against the public official charged with the duty of collecting the tax or fee or a representative of the public official unless the applicant for the order or injunction has first:
 (1) filed with the attorney general not later than the fifth day before the date the action is filed a statement of the grounds on which the order or injunction is sought; and
 (2) either:
 (A) paid to the public official who collects the tax or fee all taxes, fees, and penalties then due by the applicant to the state; or
 (B) filed with the public official who collects the tax or fee a good and sufficient bond to guarantee the payment of the taxes, fees, and penalties in an amount equal to twice the amount of the taxes, fees, and penalties then due and that may reasonably be expected to become due during the period the order or injunction is in effect.
 (b) The amount and terms of the bond and the sureties on the bond authorized by Subsection (a)(2)(B) must be approved by and acceptable to the judge of the court granting the order or injunction and the attorney general.
 (c) The application for the temporary restraining order or injunction must state under the oath of the applicant or the agent or attorney of the applicant that:
 (1) the statement required by Subsection (a)(1) has been filed as provided by the subsection; and
 (2) the payment of taxes, fees, and penalties has been made as provided by Subsection (a)(2)(A) or a bond has been approved and filed as provided by Subsection (a)(2)(B) and Subsection (b).
 (d) The public official shall deliver a payment or bond required by Subsection (a)(2) to the treasurer. The treasurer shall deposit a payment made under Subsection (a)(2)(A) into the suspense account of the treasurer.
 
 
 [16]
 780 S.W.2d 939 (Tex.Civ.App.1989)
 
 
 [17]
 Texas Alcoholic Beverage Commission v. Macha, 780 S.W.2d at 941
 
 
 [18]
 665 F.2d 705 (5th Cir. Unit A, Jan. 1982)
 
 
 [19]
 United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351-52, 63 L.Ed.2d 607 (1980) ("It is elementary that 'the United States,' as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."); United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769-70, 85 L.Ed. 1058 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."); A.L.T. Corp. v. Small Business Administration, 823 F.2d 126, 127 (5th Cir.1987) ("It is axiomatic that the United States is immune from suit and, if it consents to suit, that its consent waives its immunity only to the extent of the consent."); Williamson v. United States Department of Agriculture, 815 F.2d 368, 373 (5th Cir.1987) (The doctrine of sovereign immunity "renders the United States, its departments, and its employees in their official capacities as agents of the United States, immune from suit except as the United States has consented to be sued.")
 
 
 [20]
 Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 2378, 101 L.Ed.2d 228, 243 (1988) ("For example, a knowing violation of Rule 6 may be punished as a contempt of court. See Fed.R.Crim.Proc. 6(e)(2). In addition, the court may direct a prosecutor to show cause why he should not be disciplined and request the bar or the Department of Justice to initiate disciplinary proceedings against him. The court may also chastise the prosecutor in a published opinion. Such remedies allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant.") (emphasis added); Blalock v. United States, 844 F.2d 1546, 1551 (11th Cir.1988) ("Thus in holding that a target may seek civil contempt sanctions for a violation of Rule 6(e)(2), Lance stands for the proposition that a target may bring suit for injunctive relief against the individuals subject to Rule 6(e)(2) and may invoke the district court's contempt power to coerce compliance with an injunctive order the court grants.... Because Lance is binding, we must determine whether appellant had made out a case for injunctive relief against the prosecutor or any of the FBI agents. We do so notwithstanding that appellant had filed no suit against these individuals in the district court."); In re Grand Jury Investigation (Lance), 610 F.2d 202, 213 (5th Cir.1980) (action brought against government attorneys)
 In this regard, we comment that McQueen also erred by suing the Comptroller instead of any specific individuals alleged to have made any disclosures. He could, however, have identified these individuals through the district court. Rule 6(e)(3)(B) states that "[a]n attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, [under rule 6(e)(3)(A)(ii) ] with the names of persons to whom such disclosure has been made...." Even though we do not have jurisdiction to entertain McQueen's appeal against the Comptroller, we have not contravened our precedent by making these comments. See Jones v. Celotex Corp., 867 F.2d 1503, 1504 (5th Cir.1989) (on petition for rehearing and suggestion for rehearing en banc) ("We note that the dismissal does not result in inequity to Jones. The facts in the record plainly support the judgment notwithstanding the verdict. Absent the jurisdictional defect, the judgment surely would have been affirmed."); Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1378 (5th Cir.1980) ("Because some of the theories upon which the district court may have predicated its dismissal of ... [the defendant] may also bear upon the disposition of the claims against the other defendants and because rule 54(b) explicitly renders even the order dismissing ... [the defendant] still subject to revision by the district court, we shall, in the interest of expediency, proceed to offer that court some guidance in its further handling of these issues."); In re Corrugated Container Antitrust Litigation v. Mead Corp., 614 F.2d 958, 960 n. 1 (5th Cir.1980) ("To dispose of the present matter solely on the issues of appealability and entitlement to a writ of mandamus might put to rest questions concerning the propriety of further involvement in the case by the district judge. Nevertheless, the extraordinary stakes involved here ... and our experience with the progress of the litigation thus far convince us that ultimately appellate consideration of the issue of disqualification will likely be necessary. For those reasons we reach the merits of the contentions raised here.").
 
 
 [21]
 Because we lack jurisdiction to entertain either of these suits, we do not consider the plethora of motions McQueen filed subsequent to this appeal, nor the multitude of new issues that these motions raise