**Patrick A. TUITE, et al., Appellants,**

v.

**Mark HENRY, et al., Appellees.**

No. 95–5375.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 1996.

Decided Nov. 1, 1996.

Courtney C. Nottage, Chicago, IL, argued the cause for appellants, with whom William J. Harte was on the briefs.

John P. Schnitker, Attorney, Washington, DC, U.S. Department of Justice, argued the cause for appellee, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Leonard Schaitman, Attorney, U.S. Department of Justice, were on the brief.

Before: EDWARDS, Chief Judge, WILLIAMS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

The Office of Professional Responsibility of the Department of Justice ("OPR") conducted an investigation into allegations that someone had illegally taped privileged attorney-client conversations during the preparation of the clients' defense to charges that they had engaged in a pattern of racketeering activity. The results of the OPR investigation were placed under seal and not released to the parties during the criminal trial. After the criminal trial ended, the lawyers whose conversations had been taped filed a civil suit in federal district court in the Northern District of Illinois against some employees of the Department of Justice, claiming that the taping violated federal law and their constitutional rights. *Tuite v. Henry,* No. 93–C–3248 (N.D. Ill. filed May 28, 1993).

In the course of the civil case, the lawyers subpoenaed the documents relating to the OPR's investigation of the taping. Relying on the law enforcement investigatory privilege, a qualified privilege that protects against the release of documents whose disclosure might reveal law enforcement investigative techniques or sources, the OPR refused to comply with the subpoena. The lawyers then filed a motion in the federal district court in Washington, D.C., to compel the OPR to produce the documents. Plaintiffs' Motion to Comply with Subpoena Dated July 20, 1994, *Tuite v. Henry,* Misc. No.94–268 (D.D.C. Oct. 6, 1995), *reprinted in* Joint Appendix ("J.A.") 4. The District Court upheld the OPR's claim of privilege, finding: (1) that it had been properly raised; and (2) that appellants did not make the requisite showing of need to overcome the Government's claim of privilege. *Tuite v. Henry,* Misc. No. 94–268 (D.D.C. Oct. 6, 1995), *reprinted in* J.A. 161–66.

We affirm as reasonable the District Court's determination that the Government properly raised its claim of privilege. On the record before us, it is clear that the Government objected to the subpoena within fourteen days after service, as required by Federal Rule of Civil Procedure 45(c)(2)(B), and

then filed a claim of privilege supported by a detailed description of the documents withheld, as required by Federal Rule of Civil Procedure 45(d)(2). However, we find that the District Court abused its discretion in holding that the documents are protected from disclosure under the law enforcement investigatory privilege. In reaching this conclusion, the District Court appears to have misunderstood appellant's *need* for the documents. More importantly, the trial court accorded too much weight to a narrowly defined "need" factor and failed to address other relevant factors. *See In re Sealed Case*, 856 F.2d 268, 272 (D.C.Cir.1988) (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973), *cited in Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342–43 (D.C.Cir.1984)).

## I. BACKGROUND

### A. The Infelise *Case and the OPR Investigation*

This case arises out of a civil case pending in the United States District Court for the Northern District of Illinois. *Tuite v. Henry*, 93–C–3248 (N.D. Ill. filed May 28, 1993). Appellants, defense lawyers and plaintiffs in that case, are suing appellees, employees of the Department of Justice, claiming that appellees violated federal wiretapping law and the Constitution by recording or attempting to record conversations between appellants and their clients.

At the time the taping occurred, appellants were serving as defense counsel in a criminal action in the Northern District of Illinois before United States District Court Judge Ann Williams. *See United States v. Infelise*, 835 F.Supp. 1466 (N.D.Ill.1993). During their preparations for the criminal trial, appellants and their imprisoned clients were given access to a private room at the Chicago Metropolitan Correctional Center ("MCC") to discuss trial strategy. Despite appellees' assurances to the contrary, appellants discovered that someone was monitoring their "private" conversations at the MCC. This discovery was made when an unidentified person provided appellants with recordings of attorney-client conversations in the MCC room. *See United States v. Infel-*

*ise*, No. 90 CR 87, 1991 WL 246575, at *1 (N.D.Ill. Sept.25, 1991) (mem.). In response to appellants' complaints, the OPR investigated the taping and prepared reports that are now the subject of this subpoena-enforcement action. In the criminal action, Judge Williams ordered the OPR's reports sealed, rejecting disclosure requests by appellants, *see, e.g., United States v. Infelise*, 90 CR 87 (N.D. Ill. May 23, 1994) (order), *reprinted in* J.A. 132–33, and she determined that "the report [did] not contain any evidence that [was] favorable to the defense or the prosecution," *United States v. Infelise*, 90 CR 87, slip op. at 9 (N.D. Ill. Sept. 24, 1992) (mem.), *reprinted in* J.A. 79, 87. The Seventh Circuit agreed that the investigation had been "totally inconclusive." *United States v. DiDomenico*, 78 F.3d 294, 298–99 (7th Cir.1996).

### B. The Chicago Civil Action and the Subpoenas

After their clients were convicted, appellants filed a civil action in the Northern District of Illinois. Appellants claimed that the taping violated their rights under the Constitution and federal wiretapping law. During discovery, appellants first served a subpoena on the principal legal advisor to the Chicago office of the FBI, requesting documents related to the taping of attorney-client conversations at the MCC. The legal advisor provided some documents, but otherwise indicated that he could not furnish most of the material sought by appellants, because the reports at issue were part of an investigation file controlled by the OPR in Washington, D.C.

On July 1, 1994, Michael Shaheen, counsel to the OPR, received, via certified mail, a request for documents relating to the alleged taping. Shaheen rejected this subpoena, because it was served via mail rather than in person. On July 21, 1994, appellants personally served Shaheen with a second subpoena requesting the same documents. In a letter dated August 3, 1994, an OPR attorney advised appellants that "it appears that the documents requested are privileged or otherwise not subject to disclosure. *See* FED. R.CIV.P. 45(c)(3)." Letter from Peter D.

Coffman, Attorney, Civil Div., U.S. Dep't of Justice, to William J. Harte (Aug. 3, 1994), *reprinted in* J.A. 77. This August 3 letter relied on "the law enforcement investigatory privilege" and the "deliberative process privilege" as the reasons for the OPR's failure to comply with the subpoena.[1]

On August 19, 1994, appellants filed a motion in the United States District Court for the District of Columbia to compel compliance with the subpoena. Plaintiffs' Motion to Comply with Subpoena Dated July 20, 1994, *Tuite*, Misc. No. 94–268, *reprinted in* J.A. 4. On September 9, in opposition to the motion to comply, appellees filed a reply that included "the Shaheen Declaration," describing each document withheld and the type of privilege the Government claimed. Office of Professional Responsibility's Opposition to Plaintiffs' Motion to Comply with Subpoena Dated July 20, 1994, *Tuite*, Misc. No. 94–268, *reprinted in* J.A. 90.

The District Court denied the motion to comply, finding that the Government had properly raised its claims of privilege and that appellants had not demonstrated sufficient need to overcome the Government's defenses against disclosure. *Tuite*, Misc. No. 94–268, *reprinted in* J.A. 161–66. The trial court dismissed appellants' action without prejudice, indicating that appellants could renew their claim upon a more fully developed showing of need. *Id.* at 166.

### C. The Appellants' Motion to Strike Portions of Appellees' Brief or Alternatively to Consider Declarations

When appellants filed their reply brief with this court, they also filed a motion to strike portions of appellees' brief or, in the alternative, to consider declarations. Motion to Strike Portions of Brief, or Alternatively Consider Declarations, *Tuite v. Henry*, No. 95–5375 (D.C.Cir. motion filed July 16, 1996). Appellants claimed that appellees made the following two factual errors in their brief: first, appellees asserted that appellants, in the course of the criminal proceeding, had been supplied a list of people who had access to their "private" room at the MCC; second, appellees stated that appellants had failed to conduct even "the most rudimentary discovery." *Id.* at 1–4 (citing Brief for OPR at 7, 12, 23–26). Appellants' motion demonstrates that the Government's claims on these points are erroneous. Accordingly, appellants ask this court to strike the errors or, alternatively, to accept their declarations to show (1) that no list was ever provided to appellants and (2) their futile attempts at discovery. Appellees oppose the motion to strike as a tardy attempt to introduce new evidence. Opposition to Motion to Strike Portions of Brief or, Alternatively, to Consider Declarations, *Tuite v. Henry*, No. 95–5375 (D.C.Cir. opposition filed July 23, 1996). This court deferred decision on the motion pending oral argument on this appeal.

### II. DISCUSSION

A district court's discovery order is reviewed under an abuse of discretion standard. *In re Sealed Case*, 856 F.2d at 271. Such a "ruling [is] 'arbitrary,' regardless of how well-reasoned it might be, if it proceeds from a misapprehension of the relevant legal standard." *Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C.Cir. 1993). In this case, we find no abuse of discretion in the District Court's determination that appellees' claims of privilege were properly raised. We find, however, an abuse

---

1. The relevant portion of the letter reads:

    Although a final assessment of every document requested has not been made due to the time constraints imposed by the subpoena, it appears that the documents requested are privileged or otherwise not subject to disclosure. *See* FED.R.CIV.P. 45(c)(3). All responsive documents are contained within the investigative files of OPR, and are protected by the law enforcement investigatory privilege. Numerous of these documents make reference to, or would otherwise reveal, confidential sources. Certain documents, reflecting drafts, internal notes, and internal correspondence, are also protected by the deliberative process privilege in that they are pre-decisional and reflect the deliberative processes of agency personnel.

    Moreover, the report which forms the bulk of responsive documents appears to have been sealed by Judge Williams in the *United States v. Rocco Infelise, et al.*, 90–CR–87 (N.D. Ill.), litigation.

    Letter from Peter D. Coffman, Attorney, Civil Div., U.S. Dep't of Justice, to William J. Harte (Aug. 3, 1994), *reprinted in* J.A. 77.

of discretion in the District Court's determination that the documents are protected from disclosure under the law enforcement investigatory privilege. On this score, we hold that the District Court failed to follow the correct legal standard in assessing the appellants' request for relevant documents as against the Government's claim of privilege. Accordingly, we remand the case for further proceedings.

### A. Stating a Claim of Privilege

█ The first matter to consider here is whether appellees properly raised a claim of privilege in response to a subpoena. We hold that the District Court committed no error in finding that the OPR properly raised its claims of privilege, as required by Federal Rule of Civil Procedure 45(c)(2)(B), by sending a letter of objection within fourteen days after service of the subpoena. We also hold that the District Court was correct in ruling that the OPR's subsequent submission of a privilege log, detailing each document withheld and the reason, fully complied with the requirements of Federal Rule of Civil Procedure 45(d)(2).

Rule 45(c)(2)(B) provides:

*Subject to paragraph (d)(2) of this rule,* a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.

FED.R.CIV.P. 45(c)(2)(B) (emphasis added). Rule 45(d)(2) mandates:

[T]he claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

FED.R.CIV.P. 45(d)(2). "One problem presented by Rule 45(d)(2) is that it fails to provide any guidance as to when the claim of privilege or work product must be asserted by the person subpoenaed." 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2464 (1995). This confusion has led more than one court to conclude that Rule 45(d)(2) permits the assertion of the privilege at the time for compliance with the subpoena regardless of whether an objection or motion to quash has been filed prior to the time of compliance. *See Ventre v. Datronic Rental Corp.,* No. 92 C 3289, 1995 WL 42345, *3–4 (N.D.Ill. Feb.2, 1995) (mem.); *Winchester Capital Management Co., Inc. v. Manufacturers Hanover Trust Co.,* 144 F.R.D. 170, 175–76 (D.Mass. 1992). We think this approach is misguided.

█ In our view, a party objecting to a subpoena on the basis of privilege must both (1) object to the subpoena and (2) state the claim of privilege within fourteen days of service, as required by Rule 45(c)(2)(B). The language in Rule 45(c)(2)(B) making it "subject to" Rule 45(d)(2) does not alleviate the responsibility of objecting parties to assert their objections based on privilege within fourteen days of service of the subpoena. Rather, we believe the "subject to" language merely clarifies the type of information that the objecting party will eventually be expected to provide.

█ Common sense and the purpose of the rule dictate that the "subject to" language of Rule 45(c)(2)(B) does not mandate that the full description required by Rule 45(d)(2) be provided at the time the initial objection is asserted. Although Rule 45(d)(2) does not contain a specific time limit within which objecting parties must supply the requisite privilege log, the Advisory Committee Notes indicate that the purpose of the Rule "is to provide a party whose discovery is constrained by a claim of privilege ... with information sufficient to evaluate such a claim and to resist if it seems unjustified." FED.R.CIV.P. 45(d)(2) advisory committee's note. Consistent with this purpose, the responsibility rests with the district court to ensure that the information required under the Rule is provided to the requesting party within a *reasonable time,* such that the claiming party has adequate opportunity to evaluate fully the subpoenaed documents and the requesting party has ample opportunity to contest that claim. District courts must then

take account of the information provided under Rule 45(d)(2) in ruling on a motion to comply. In this case, we find that the District Court did not abuse its discretion in concluding that the Rule's purpose was served where the privilege log required by Rule 45(d)(2) was filed within a reasonable time in response to appellants' motion to comply.

In addition, to sustain a claim of privilege, this circuit requires: (1) a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed with an explanation why it properly falls within the scope of the privilege. *In re Sealed Case*, 856 F.2d at 271. Again, we find that the District Court committed no error in concluding that the Shaheen Declaration submitted in response to the motion to comply meets these requirements. Mr. Shaheen, who is counsel to the OPR, indicated that he had personally reviewed the documents under subpoena, specified the privilege claimed with respect to each document, and provided an explanation of the reasons for each claim of privilege. *See* Office of Professional Responsibility's Opposition to Plaintiffs' Motion to Comply with Subpoena Dated July 20, 1994, *Tuite*, Misc. No. 94–268, *reprinted in* J.A. 90, 113.

## B. Evaluating a Claim of Privilege

Having found that appellees properly asserted their claims of privilege, we now face the more difficult question focused on the merits of appellants' discovery request as against appellees' claim of privilege. In addressing this question, the District Court was required to weigh "[t]he public interest in nondisclosure ... against the [appellants'] need ... for access to the privileged information." *In re Sealed Case*, 856 F.2d at 272. To achieve this end, a number of factors must be considered, including:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Id.* (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973), *cited in Friedman*, 738 F.2d at 1342–43).

In other words, a party's "need" for subpoenaed documents is determined by weighing numerous factors. In this case, however, the trial court found that appellants had shown no "need" for disclosure solely because they failed to demonstrate that they were unable to elicit the disputed information through discovery. This one factor simply cannot be determinative. Need in the context of the law enforcement investigatory privilege is meant to be an elastic concept that does not turn only on the availability of the information from an alternative source.

There are two problems with the District Court's analysis. First, it appears that the District Court may have misunderstood the nature of appellants' particular need for the documents in light of its assumptions about previous information provided to appellants and the effectiveness of alternative sources of information. The District Court opinion states that appellants "have not shown that they are unable to elicit the information through discovery." [2] *Tuite*, Misc. No.94–

---

**2.** We assume that the District Court's statement was intended merely to be a shorthand

268, slip op. at 6, *reprinted in* J.A. 166. The foundation for the trial court's statement is unclear. In their brief to this court, appellees claimed that appellants were given a list of people who had access to the MCC room during the time when the taping occurred. Brief for OPR at 7 n.4, 12, 23–25. Appellees also contended that appellants failed to seek discovery from these people at the MCC. Brief for OPR at 12, 23–26. Declarations submitted by appellants in response to these claims indicate that appellees' statements are both wrong and misleading. Motion to Strike Portions of Brief, or Alternatively Consider Declarations, *Tuite*, No. 95–3575 (D.C.Cir. motion filed July 16, 1996). If the District Court relied on these apparently mistaken assertions, then its judgment was infected by a misunderstanding of appellants' particular need for the documents. On the record at hand, we simply cannot discern the basis for the District Court's judgment on this point.

Second, and more importantly, the District Court clearly erred in relying almost exclusively on a narrowly defined notion of appellants' "need" for the documents. In this regard, the District Court held that,

> [o]nce the privilege has been claimed, it becomes the duty of the "demanding party to show his or her need for disclosure." In this case, plaintiffs have not adequately met that burden.... [P]laintiffs have not shown that they are unable to elicit the information through discovery.

*Tuite*, Misc. No. 94–268, slip op. at 6 (citation omitted), *reprinted in* J.A. 166. The trial court cited the *Frankenhauser* decision in a footnote, *id.* at 6 n. 9, *reprinted in* J.A. 166, but provided no other indication that it had considered the numerous factors outlined in

version of *Frankenhauser* factor number "(9)"—"whether the information sought is available through other discovery or from other sources"—and not a more stringent version of that factor.

3.  We recognize that the court in *Friedman*, 738 F.2d at 1336, held that "[w]hether the materials are available from other sources is a factor in determining the degree of the litigant's need to obtain it from the governmental agency or officer claiming the privilege." *Id.* at 1341. But this is a far cry from the District Court's suggestion in this case that plaintiffs must show, as a threshold

*Frankenhauser.* We have made it clear that exclusive reliance on one factor does not satisfy the "essential balancing process." *See In re Sealed Case*, 856 F.2d at 272.

A principal problem with the District Court's opinion is the suggestion that, as a threshold matter, plaintiffs carry the burden of showing that the information they seek cannot otherwise be elicited through discovery, and that failure to satisfy this burden is fatal as against a claim of privilege. However, it is clear that there is no such threshold requirement under the established case law. As we have already noted, "need," understood as the availability of information from alternative sources, is but one among many factors to be weighed in assessing a demand for relevant documents as against a claim of privilege.[3]

The simple point here is the one that we made in *In re Sealed Case*:

> [T]he law enforcement investigatory privilege is qualified. The public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information.... The process of identifying and weighing the competing interests cannot be avoided.

856 F.2d at 272 (citations omitted). The court in *In re Sealed Case* cites ten different factors, drawn from *Frankenhauser v. Rizzo*, 59 F.R.D. at 344, "as illustrative of the factors the district court *must* consider," 856 F.2d at 272 (emphasis added). So it is clear that "the need of a particular litigant" to which the court refers in *In re Sealed Case* is not "need" in the narrow sense described by the trial court here. It is also clear that the District Court in the instant case failed to

matter, that they are unable to elicit the information through discovery. *Friedman* also indicates that a plaintiff may be required to "make a strong showing of unavailability from alternative sources." *Id.* Nothing in *Friedman*, however, can be read to negate the "essential balancing process" required by *In re Sealed Case*. *See* 856 F.2d at 272. In other words, under both *Friedman* and *In re Sealed Case*, "[t]he process of identifying and weighing the competing interests cannot be avoided," *id.*, and "need" is but one factor to be considered in the balancing process.

weigh the competing interests cited in *In re Sealed Case.*

Because the District Court's decision does not reflect the "essential balancing process" required by *In re Sealed Case,* we are constrained to remand the case for further consideration. On remand, the information contained in appellants' declarations testifying to the fact that they never received a list of people with access to the MCC room and to the ineffectiveness of alternative means of obtaining the desired information should be considered by the trial court, along with any other facts that will facilitate a weighing of the competing interests in this case.

### III. CONCLUSION

We hereby remand the case for a determination of whether the subpoenaed documents are in fact protected by the law enforcement investigatory privilege in light of a full consideration of the *Frankenhauser* factors.

*So ordered.*