**Alvy T. McQUEEN, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. H–91–0329.**

United States District Court, S.D. Texas, Houston Division.

May 6, 1998.

John A. Townsend, Townsend & Jones, Houston, TX, for Plaintiff.

Stuart Gibson, U.S. Department of Justice, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

COBB, District Judge. ·

## I. PROCEDURAL HISTORY and BACKGROUND

In an earlier opinion, this Court summarily dismissed all McQueen's pending claims against all defendants in this lawsuit except the Freedom of Information Act (FOIA)[1] claim which McQueen has alleged against the United States Department of Justice (US-DOJ).[2] Presently before the court is the USDOJ's Motion for Summary Judgment on that sole remaining claim. Summary Judgment is commonly used to resolve most FOIA claims. *Struth v. FBI*, 673 F.Supp. 949, 953 (E.D.Wis.1987).

1. 5 U.S.C. § 552 et seq.

2. In this suit and a related suit (H–95–1453), McQueen sought damages from Assistant United States Attorney (AUSA) Nancy Pecht (Pecht), who was in charge of the criminal prosecution against McQueen and IRS agents Susie Wong (Wong) and Mark Hughes (Hughes) for alleged violations of Federal Rule of Criminal Procedure 6(e), 26 U.S.C. §§ 6103(d), 6103(h), and 7431.

In January, 1990, McQueen sent a letter to the USDOJ requesting numerous agency records under the FOIA. 5 U.S.C. § 552 et seq. The USDOJ responded by disclosing some of the requested records and denying the disclosure of others pursuant to the statutory exemptions to disclosure contained in 5 U.S.C. § 552(b). McQueen filed this suit in February, 1991. In this suit he claims *inter alia*, that the USDOJ violated the FOIA by failing to disclose all of the requested records. The following is a brief chronology of the critical events which gave rise to this litigation:

1) On or about January 7, 1987, the IRS Criminal Investigation Division (CID) in Houston opened an Information Gathering Project (Project) to investigate the possible evasion of federal motor fuel taxes;

2) In February, 1988, the USDOJ opened a federal grand jury investigation (Grand Jury I) which targeted an individual who was not a party to this suit;[3]

3) On or about June 17, 1988, the IRS opened an administrative investigation of McQueen for possible criminal tax evasion;

4) On or about July 14, 1988, the USDOJ opened a grand jury investigation of McQueen on a charge of *obstruction of justice* (Grand Jury II) stemming from McQueen's alleged destruction of documents sought by the IRS;

5) On or about August 8, 1988, the USDOJ received approval from the IRS to expand the Grand Jury I grand jury investigation to name of McQueen as a target (Grand Jury III);

6) On or about January 12, 1990 McQueen made his FOIA request which is the subject of this claim;

7) On February 1, 1991, McQueen filed suit in the Federal District Court for the

This court found no legal or factual merit to any of these claims and dismissed them in accordance with FED.R.CIV.P. 12(b)(6), 56.

3. This grand jury investigation was targeted at an individual not a party to this suit and who was suspected of criminally evading excise taxes in connection with the sale of motor fuels in the Houston area.

Southern District of Texas claiming, *inter alia*, the USDOJ violated the FOIA;

8) On December 10, 1991, the USDOJ opened a new grand jury investigation of McQueen for criminal evasion of excise taxes on motor fuels (Grand Jury IV); and

9) On or about July 8, 1992, Grand Jury IV indicted McQueen on twenty-four (24) counts of tax evasion to which he voluntarily pled guilty to Counts 1 and 23.

Only McQueen's FOIA claim remains before this court. This court, for reasons stated in its analysis, grants the USDOJ's Motion for Summary Judgment and dismisses McQueen's FOIA with prejudice in accordance with FED.R.CIV.P. 56(a). This ruling should end the oppressive seven year litigation war that McQueen and his lawyer have waged against nearly everyone connected with McQueen's criminal prosecution.

## II. ANALYSIS

### a. DEFINITION OF THE CLAIM

In the discovery phase of this lawsuit, McQueen sought much of the same information he sought in his FOIA. Consequently, the parties in this litigation have distorted and obscured the boundary between FOIA disclosures and discovery. Because, the FOIA was not intended to function as a private discovery tool,[4] the court must redraw that boundary before it can determine which USDOJ records were the subject of McQueen's FOIA request and whether those records were disclosed or properly withheld by the USDOJ, pursuant to 5 U.S.C. § 552(b).

In *United States Department of Justice v. Tax Analysts*, the Court explained that for agency records to be subject to the disclosure provisions of the FOIA, they must have in fact been obtained. *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 144, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). The court further said that to qualify as an agency record, the agency must: 1) create or obtain the requested materials; and 2) be in control of the requested material *at the time the FOIA request is made. Id.* at 144-45, 109 S.Ct. 2841 (*emphasis added*). It follows that McQueen's FOIA claim pertains only to those agency records which were in the USDOJ's control of the as of January 12, 1990—the request date.

Records and materials acquired by the US-DOJ after January 12, 1990, by definition, were not in the USDOJ's control as of the request date and, therefore, are not the subject of McQueen's FOIA request. Any dispute concerning the disclosure of records or materials acquired by the USDOJ after January 12, 1990, must be evaluated under the discovery provisions of the Federal Rules of Civil Procedure and are not germane to McQueen's FOIA claim.[5] This court will not revisit the numerous discovery disputes that permeated this lawsuit.

### b. STANDARD of REVIEW

 Under the FOIA, an agency must disclose those agency records requested unless the records may be withheld pursuant to one or more of the exceptions listed in 5 U.S.C. § 552(b).[6] *Department of Justice v.*

---

4. *See e.g. NLRB v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143, n. 10, 95 S.Ct. 1504, 44 L.Ed.2d 29, (1975) *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989); *U.S. v. Weber Aircraft Corp.*, 465 U.S. 792, 801, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984).

5. *See* FED.R.CIV.P. *26–37. Tax Analysts* also implies that, unlike discovery disclosures, the FOIA contains no provision which obligates an agency to update FOIA disclosures. *Tax Analysts*, 492 U.S. at 139–40, 109 S.Ct. 2841 (Respondent who published a weekly magazine on developments in the field of taxation, filed weekly FOIA requests for district court opinions and orders.).

6. Title 5 United States Code Section 552(b) states in pertinent part:

This section does not apply to matters that are—

. . . .

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

. . . .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

*Julian,* 486 U.S. 1, 8, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988). FOIA exemptions to disclosure are to be construed narrowly in favor of disclosure. *See Department of Air Force v. Rose,* 425 U.S. 352, 361–62, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). When an agency claims an exemption, the burden is on that agency to sustain its refusal to disclose agency records and the district courts shall determine, *de novo,* whether the agency had met its burden. *United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (*internal citations omitted*); *Rose,* 425 U.S. at 379, 96 S.Ct. 1592; *Avondale Industries, Inc. v. N.L.R.B.,* 90 F.3d 955 (5th Cir.1996). Despite this, courts have upheld the Government's invocation of the FOIA's statutory exemptions. *See NLRB v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Rose, supra* at 361, 96 S.Ct. 1592.

■ When the district court decides whether a request for information, which amounts to a 'somewhat unwarranted invasion of privacy', falls within an FOIA exemption barring disclosure, it must balance the public interest in disclosure against the interest Congress intended the exemption to protect. *U.S. Department of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). That court further stated that the only relevant "public interest in disclosure" to be weighed in this balance is the extent to which disclosure would serve the "core pur-

pose" of the FOIA. *Id.* at 775, 109 S.Ct. 1468. The FOIA's core purpose is nothing more than "contributing significantly to public understanding of the operations or activities of the government." *Id.,* 109 S.Ct. 1468; *United States Department of Defense et al. v. Federal Labor Relations Authority et al.,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994)(FOIA's purpose is not advanced by disclosing information concerning private citizens which is accumulated in various governmental files but, which reveals little or nothing about an agency's own conduct.); *Avondale,* 90 F.3d at 958 (FOIA's purpose is to ensure an informed citizenry, vital to the functioning of a democratic society, has a means to check against to corruption and to hold the governors accountable to the governed.).

The USDOJ asserts it disclosed all agency records it was required to and that any agency record not disclosed, was lawfully withheld pursuant to one or more of the FOIA's statutory exemptions listed in 5 U.S.C. § 552(b).

McQueen counters that the USDOJ failed to account, to him and the court, for agency records he suspects exist, and that the USDOJ improperly invoked the statutory exemptions to disclosure.

McQueen's January 12, 1990, letter to the USDOJ's various FOIA officers consisted of eleven (11) definitions and eighteen (18) broadly drafted requests for agency records, many of which were arguably not available for disclosure.[7]

....

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ..., (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ..., or (F) could reasonably be expected to endanger the life or physical safety of any individual;

....

5 U.S.C. § 552(b).

7. In the 'Background' section of his January 12, 1990 letter to the USDOJ, McQueen's attorney John Townsend stated, "The McQueens are or have been recently the subject(s) or target(s) of at least one grand jury investigation in the Southern District of Texas, Houston, Texas and the subject(s) or target(s) of at least one IRS administrative investigation allegedly lead by Pecht." *Townsend to Department of Justice,* Jan. 12, 1990, p. 2. Even armed with such knowledge, McQueen drafted many of his requests so broadly that they sure to raise a dispute as to whether the agency records sought could be withheld pursuant to the statutory exemptions listed in 5 U.S.C. § 552(b).

### c. ALLEGED VIOLATIONS

In "Plaintiff's Brief on FOIA Claims [sic]", McQueen alleges the USDOJ violated the FOIA by failing disclose the following (Request number refer to the McQueen's citation to the enumerated requests in his January 12, 1990 request letter):

a. The list of Justice Department personnel assisting the grand jury (Request 2 [sic]);

b. The list of personnel other than Justice Department personnel assisting with the grand jury (Request 3 [sic]);

c. [Federal Rule of Criminal Procedure] Rule 6(e)(3)(B) Disclosure Lists (Request 5); and

d. Documents related to the alleged administrative investigation of McQueen containing the recommendation of the U.S. Attorney or Assistant U.S. Attorney for criminal prosecution of McQueen (Requests 9, 11, and 12.) Included within would have been the entire administrative file of the criminal investigation of McQueen that was in the possession of the Department of Justice pursuant to the referral requested in 1988 and authorized by the IRS in August 1988.

***Plaintiff's Brief on FOIA Claims*** [sic] **Apr. 8, 1998, p. 4.**

McQueen argues that: 1) these [specific examples] are "just illustrative of the documents that exist or are supposed to exist [and were not disclosed or accounted for by the USDOJ]"; 2) "If indeed the investigation of McQueen was only administrative in nature until July 15, 1988, then any aspect of the McQueen investigation prior to prior to [sic] July 15, 1988 perforce cannot be grand jury matters" [therefore, 5 U.S.C. §§ 552(b)(3) and FED.R.CRIM.P. 6(e) exemptions to disclosure were improperly invoked];

3) the USDOJ improperly invoked the 5 U.S.C. §§ 552(b)(5), (b)(7)(C), and (b)(7)(D) exemptions to disclosure; and 4) the Fifth Circuit 'recognized' that the FED.R.CRIM.P. 6(e)(3)(B) disclosure lists should be available to him.[8]

The USDOJ asserts it revealed to the court all agency records in existence, that the specific examples cited by McQueen are exempt from disclosure under one or more of the exemptions listed in 5 U.S.C. § 552(b) and FED.R.CRIM.P. 6(e), and that it lawfully invoked the 5 U.S.C. §§ 552(b) exemptions to withhold other documents. Because McQueen asserted that the specific examples are "illustrative" of more sweeping violations, the court will address them within the broader context.

#### 1. *The Existence of Other Documents*

■ McQueen's first contention is basically, 'The USDOJ possesses agency records which have not been disclosed or accounted for and to which I am entitled to under my FOIA request. Further, I can only prove the existence of such records if the court orders their disclosure.' Because the facts say otherwise, the court refuses to get caught up in this circular argument.

By court order, the USDOJ was required to disclose the extent of its agency records pertaining to his case. In its broad order, the court asked for an accounting of **all** records irrespective of whether the records could be obtained through an FOIA request, through discovery under Federal Rules of Civil Procedure, or not at all. In response, the USDOJ submitted a complete accounting of **all** records it held without regard to the FOIA request date.[9] The fact that the USDOJ submitted this accounting in a Vaughn index format is immaterial to this analysis.[10] The accounting shows that more than 4000 pages of documents or materials were collected or produced in this case. The USDOJ

---

8. See *McQueen v. Bullock,* 907 F.2d 1544, 1551 n. 20 (5th Cir.1990).

9. Even though many records are dated after January 12, 1990, and, by definition, are not responsive to McQueen's FOIA request, they were still listed by the USDOJ.

10. McQueen asserts that the USDOJ in its accounting, listed agency records which are non-responsive to the FOIA request in an attempt to mask records which are responsive. This assertion is utterly without merit.

also submitted sworn affidavits in which the various officers in charge of the records testified that the USDOJ's accounting and submissions to court constituted the extent of the USDOJ's records on this subject.

Given the weight of the evidence, the USDOJ has met its burden of showing that no unaccounted for agency records, which may be responsive to McQueen's FOIA request, exist in this matter. This court can not order the USDOJ to produce records which do not exist. It therefore finds McQueen's contention to be wholly without merit.

### 2. Matters Before the Grand Jury

McQueen's second contention is, "If indeed the investigation of McQueen was only administrative in nature until July 15, 1988, then any aspect of the McQueen investigation prior to prior to [sic] July 15, 1988 perforce cannot be grand jury matters." This can be interpreted a number of ways, none of which have merit and all of which lead to absurd results.

■ Without expressly stating so, McQueen is attempting to engraft the discovery concept of relevance onto the 5 U.S.C. § 552(b)(3) and FED.R.CRIM.P. 6(e) exemptions His general contention seems to be that the 5 U.S.C. § 552(b)(3) and FED.R.CRIM.P. 6(e) exemptions to disclosure only apply to those records which can be classified as "matters before **the** grand jury" which is investigating **the** party making the FOIA request and further, in the event there was more than one grand jury is investigating the party making the FOIA request, the exemptions may apply only to those records which

are narrowly directed to particular offense which is being investigated by the particular grand jury.[11]

To illustrate, McQueen urges that the U.S. Attorney's letter to the IRS, dated July 15, 1988,[12] requested approval .to open a grand jury investigation of McQueen for tax evasion "perforce cannot be a grand jury matter". McQueen's position seems to be that the § 552(b)(3) and 6(e) FOIA exemptions do not apply because the letter was irrelevant to Grand Jury I and II and it predated Grand Jury III. Therefore, the letter can not be a "matter before the grand jury" because it is not a matter before the relevant grand jury—the relevant grand jury being Grand Jury III which investigated McQueen for tax evasion. Consequently under McQueen's contention, the letter must be disclosed under the FOIA even if it contain information that constitutes matters before Grand Jury I or Grand Jury II.

■ This court disagrees. Relevance is not a concept that applies to what records are subject to disclosure under the FOIA, nor does it apply to the statutory exemptions to disclosure. The plain language of the statutes do not impose a relevancy requirement and McQueen offers no authority in support of his position.[13] Rule 6(e) of the Federal Rules of Criminal Procedure is not limited to 'relevant' grand juries. It requires all matters before the grand jury be kept secret regardless of who is seeking the information.[14] Furthermore, McQueen's attempt to create a rule requiring grand jury matters be relevant to the party making the FOIA request before the § 552(b)(3) and Rule (6)(e) exemptions can be invoked would cre-

---

11. McQueen attempts to further limit the grand jury exception by arguing that, even if the letter was shown to Grand Jury II which also investigated McQueen, it is not exempt from disclosure as a matter before the grand jury because Grand Jury II's investigated concerned obstruction of justice which was distinct from Grand Jury III which later investigated McQueen for tax evasion.

12. This letter and the IRS response letter, dated August 8, 1988, are currently in possession of the court.

13. Such a requirement would be contrary to Congress' core purpose in enacting the FOIA which is "contributing significantly to *public* un-

derstanding of the operations or activities of the government." *U.S. Department of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (*emphasis added*). It follows that if the public is to understand the operations or activities of the government it must have access the agency records without regard to whether such records are in some way relevant to the requestor.

14. There are limited number of circumstances in which grand jury information can be divulged but, these are not at issue here.

ate an anomaly which would obliterate Rule 6(e)'s grand jury secrecy protections.[15]

This court will not fashion a rule which would lead to such an absurd result, nor will it construe the 5 U.S.C. § 552(b) and FED. R.CRIM.P. 6(e) exemption so narrowly as to deprive it of any meaningful reach and application. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989).

If McQueen is urging upon the court a rule which says the § 552(b)(3) and Rule 6(e) exemptions can not apply to materials which predate a grand jury, this contention is equally without merit. Such a rule would render the § 552(b)(3) and Rule 6(e) devoid of any meaning and would also destroy the grand jury secrecy protections of Rule 6(e). It is axiomatic that grand juries investigate crimes which have already occurred.[16] Most, if not all evidence of a particular crime, predates the grand jury which is charged with investigating that crime and delivering indictments.[17] Consequently, under McQueen's rule, any record relating to the crime which predated the grand jury could be discovered through an FOIA request even if that record was shown to the grand jury investigating the crime. Hence, there would there would be few if any grand jury matters that could not be obtained through an FOIA request. Such a rule would effectively gut FED.R.CRIM.P. 6 of all meaningful protections.

Finally, if McQueen's is arguing that the § 552(b)(3) and Rule 6(e) exemptions to FOIA disclosures only apply to agency records that gathered by the grand jury itself, he needs a reality check. The most common means by which an agency record becomes a 'matter before a grand jury' is when that record is actually shown to the grand jury. It is irrelevant whether the record was initially gathered by a grand jury subpoena or through an agency's administrative investigation. In fact, many criminal cases are originate with an investigation by a administrative agency other than the USDOJ.[18] When the agency refers the case to the USDOJ for prosecution, it invariably transfers the records it gathered in its investigation (administrative record). Much, if not all of that administrative record is inevitably presented to the grand jury. At that point, it becomes incontrovertibly a 'matter before the grand jury'.[19] *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983); *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983).

The facts of this case are straightforward. McQueen made his FOIA request in the midst of four grand juries. Three of the four grand juries preceded McQueen's FOIA request. Two of those three specifically targeted McQueen. Grand Jury I targeted an individual who is not a party to this suit and who was suspected of evading excise taxes on motor fuels. Grand Jury II targeted McQueen for obstruction of justice, and Grand Jury III targeted McQueen for tax

15. Under McQueen's position anyone (such as a member of the press) could acquire any matter before any grand jury through an FOIA request provided that the person making the request was not the target of the grand jury. The USDOJ would only be able to withhold grand jury matters in the rare occasions that the person making the FOIA request was the target of the grand jury. For all practical purposes, grand jury secrecy as defined in FED.R.CRIM.P. 6(e) would cease to exist because the FOIA would allow anyone to obtain any grand jury matter.

16. This court has yet to see a grand jury investigation of prospective crime.

17. This is best illustrated in the case of a so-called white collar crimes. These are generally 'document cases'—that is the evidence in these cases consists almost entirely of documents produced by those accused of the offenses and the persons with whom they have dealt. These documents invariably predate the convening of a grand jury charged with investigating the offenses and thus, under McQueen's position could never be matters before the grand jury subject to Rule 6(e) protections.

18. For example, tax evasion and tax fraud cases usually begin with an IRS investigation, environmental crimes begin with an EPA investigation, securities fraud begins with an SEC investigation, and federal drug crimes begin with FBI or DEA investigations. The last time the court checked, these were still administrative agencies.

19. The question is when, not whether, Rule 6(e) protections attach.

evasion.[20] Any part of the USDOJ's administrative record which was shown to any of these grand juries and any correspondence which contains any matter before any of these grand juries may be withheld from anyone making an FOIA request pursuant to 5 U.S.C. § 552(b) and FED.R.CRIM.P. 6(e).

As to the July 15, 1988 grand jury request letter, the court has examined it and the IRS's response letter. Both letters contain information from Grand Jury I. Accordingly, both letters constitute "matters before the grand jury" and are exempt from disclosure under 5 U.S.C. § 552(b)(3) and FED. R.CRIM.P. 6(e). With respect to the entire 'administrative record from the IRS administrative investigation' sought by McQueen, this court after reviewing the evidence finds that there was no separate administrative record to which he was entitled to disclosure under the FOIA. The evidence indicates that at the time of McQueen's FOIA request, nearly all of what constituted the IRS administrative record had became a 'matter before the grand jury' because the record had already been shown to Grand Jury III when McQueen made his FOIA request. Those portions of the IRS administrative record which were not shown to the grand jury and which were not withheld pursuant to another FOIA exemption, were disclosed to McQueen.

Accordingly, McQueen's contention that the USDOJ improperly withheld documents pursuant to 5 U.S.C. § 552(b)(3) and FED. R.CRIM.P. 6(e) is without merit.

3. *Work Product, Privacy and Law Enforcement Exemptions*

■ McQueen's third contention is that the USDOJ improperly withheld documents under the 5 U.S.C. §§ 552(b)(5), (b)(7)(C), and (b)(7)(D) exemptions to disclosure. He approaches this in two ways. First, he argues that the government failed to follow a particular procedure for asserting the 5 U.S.C. §§ 552(b)(7) exemption to disclosure

and thereby, invalidating the USDOJ's its claim that certain records are exempt from disclosure.[21] *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C.Cir.1996). Second, McQueen argues that even if the procedure was properly followed, the USDOJ did not mask a particularized showing for each confidential informant that there was an express or necessarily inferred assurance of confidentiality. *U.S. Department of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

The USDOJ argues that the records were properly withheld. It further asserts that: 1) had the withheld documents been disclosed, McQueen would have learned the identities of the confidential informants; 2) an express guarantee of confidentiality was given to some of the informants; and 3) under the circumstances, confidentiality may be fairly inferred to those who did not have an express guarantee of confidentiality.

McQueen's procedural argument is without merit. Like his Rule 6(e) contention, McQueen by citing to *Tuite*, attempts to engraft onto the FOIA the procedure for claiming the qualified law enforcement privilege against discovery. When Congress enacted the FOIA, it established a procedure for seeking and disclosing agency records, it established an accounting system for monitoring which documents were requested and disclosed, and it established a requirement that certain compliance reports be submitted annually. *See* 5 U.S.C. §§ 552(c-f).

McQueen invites this court to impose the procedure for asserting privilege against discovery under the Federal Rules of Civil Procedure upon an agency invoking a FOIA exception to disclosure. This procedure, though available, was not imposed by Congress when it enacted the FOIA, nor has it been imposed by any other court. Such an imposition by this court would be contrary to the Supreme Court's numerous pronouncements that FOIA and discovery under the Federal Rules of Civil Procedure serve separate purposes and accordingly operate under

---

**20.** Grand Jury IV, which ultimately indicted McQueen, among others, for tax evasion was convened after McQueen's FOIA request.

**21.** McQueen argues among other things that *Tuite* stands for the proposition that only the head of the department having control over the requested information can assert the Law Enforcement Investigatory Exemption.

different rules. *John Doe Agency,* 493 U.S. at 153 ("In deciding whether Exemption [§ 552(b)] 7 applies, moreover, a court must be mindful of this Court's observations that the FOIA was not intended to supplement or displace rules of discovery."); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143, n. 10, 95 S.Ct. 1504, 44 L.Ed.2d 29, (1975) (The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery.) [22] Accordingly, this court will decline McQueen's invitation.

■ McQueen also argues that even if the USDOJ followed the proper procedure, the exemption still does not apply because *Landano* requires the USDOJ to make a particularized showing for each confidential informant that the agency expressly granted or necessarily inferred an assurance of confidentiality. This approach is also without merit.

*Landano* does not support McQueen's argument for such a heightened standard. The *Landano* court stated,

> "There may well be other generic circumstances in which an implied assurance of confidentiality fairly can be inferred." . . . "The Court of Appeals below [Third Circuit] declined to rely on such circumstances. But several other Court of Appeals decisions (including some of those the Government cites favorably) have justified non-disclosure under Exemption 7(D) by examining factors such as the nature of the crime and the source's relation to it." . . . "We think this more particularized approach is more consistent Congress' intent to " ' "workable" rules' " of FOIA disclosure.

*Landano,* 508 U.S. at 179–80, 113 S.Ct. 2014 (*internal citations omitted* ).

This court's examination of the USDOJ's disclosures reveals that several of the confidential informants were expressly given assurances of confidentiality. As to the informants who were not given an express assurance of confidentiality, this court balances their privacy interests, viewed in light of the factors that would fairly imply an assurance of confidentiality, against the public interest in releasing the records at issue to McQueen. *Id.; Reporters Comm. for Freedom of Press,* 489 U.S. at 776, 109 S.Ct. 1468; *FLRA,* 510 U.S. at 495, 114 S.Ct. 1006. Though the court acknowledges that McQueen arguably has a private interest in the records which reveal the identities of the confidential informants who helped build the criminal case against him, this court sees little or no "public interest" in these particular records.[23]

Next, based on the circumstances, this court concludes an implied assurance of confidentiality can fairly be inferred to these informants. *Landano,* 508 U.S. at 179, 113 S.Ct. 2014. In arriving at this conclusion, this court considered the relationships between these informants and McQueen, these informants' potential criminal liabilities or lack thereof, and McQueen's ability to harm these informants both physically and economically if he were to discover their identities. This court believes these individuals would not have cooperated with either the USDOJ or the IRS in McQueen's criminal prosecution if their identities were not to be kept confidential. Balancing these informants' significant privacy interest against the almost nonexistent FOIA related public interest, this court is of the opinion that the USDOJ was not require to release agency

---

**22.** *See also John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 153, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989) (In deciding whether Exemption 7 applies, moreover, a court must be mindful of this Court's observations that the FOIA was not intended to supplement or displace rules of discovery.); *U.S. v. Weber Aircraft Corp.,* 465 U.S. 792, 801, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984) (Moreover, respondents' contention that they can obtain through the FOIA material that is normally privileged would create an anomaly in that the FOIA could be used to supplement civil discovery. We have consistently rejected such a construction of the FOIA. (internal citations omitted)).

**23.** The only relevant "public interest in disclosure" to be weighed in this balance is the extent to which disclosure would serve the "core purpose" of the FOIA which is "contributing significantly to public understanding of the operations or activities of the government." *U.S. Department of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

records to McQueen which would have divulged the informants' identities. *See Burge v. Eastburn*, 934 F.2d 577, 580 (5th Cir.1991). Accordingly, this court finds that the USDOJ properly invoked the 5 U.S.C. § 552(7) exemptions to disclosure.

### 4. The Fifth Circuit's "Recognition" of McQueen's Right to Disclosure Lists

McQueen's final argument is that the Fifth Circuit in *McQueen v. Bullock*, recognized his right to receive the FED.R.CRIM.P. 6(e)(3)(B) disclosure lists. *McQueen v. Bullock*, 907 F.2d 1544, 1551 n. 20 (5th Cir.1990)

As he has done many other matters in the course of this litigation, McQueen takes Fifth Circuit's comment entirely out of context and, as a result, misstates the court's position. In *McQueen v. Bullock*, the court discussed the application of *Lance*[24] to McQueen's claim against Texas State Comptroller Bob Bullock. *Id.* The gist of the court's comment was, had McQueen complained of a Rule 6(e) violation to the district court supervising the grand jury he might have obtained the identity of the person leaking the grand jury material from the district court which possessed the Rule 6(e)(3)(B) disclosure lists.[25] *Id.* The court in no way said the McQueen, himself, was entitled to the disclosure list, nor did it imply that McQueen could obtain the grand jury disclosure list through an FOIA request. The FOIA was not even at issue in either *McQueen v. Bullock or Lance.*

This is not the district court supervising the grand jury, and the claim being addressed is for a violation of the FOIA, not Rule 6(e). *McQueen v. Bullock* simply does not apply to this case. Accordingly, McQueen may take the Fifth Circuit's comment out of context and use it as authority to skirt a properly asserted section § 552(b)(3) exemption to disclosure.

### III. SUMMARY JUDGMENT

A motion for summary judgment will be granted if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party who, "may not rest upon the mere allegations or denials [in its] pleadings, but the [nonmoving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). In determining the existence of a genuine issue for trial, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

McQueen offers little or no authority for his rather bizarre assertions of the law governing his FOIA claim. In the few instances where he cites authority, he either misinterprets the court's holding, or the case is distinguishable on the facts or law. Furthermore, in his analysis, he frequently fails to

---

24. *In re Grand Jury Investigation (Lance)*, 610 F.2d 202 n. 20 (5th Cir.1980) (which concerned a leak of grand jury information in violation FED. R.CRIM.P. 6(e)).

25. The Rule 6(e)(3)(B) is by definition a grand jury matter.

even account for critical facts which will affect the disposition of his claim. Consequently, McQueen's last remaining claim in this drawn-out litigation will meet the same fate as his previous claims—summary judgment.

Based on this court's analysis, the USDOJ is entitled to summary judgment on McQueen's FOIA claim. The USDOJ has demonstrated that no genuine issues of material fact exist, and that it is entitled to judgment as a matter of law. Therefore, in accordance with the provisions of FED.R.CIV.P. 56(a), this court will grant summary judgment to the USDOJ and dismiss with prejudice McQueen's FOIA claim.

An appropriate order will be entered.